**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 29, 2013

No. 12-40271

Lyle W. Cayce
Clerk

In the Matter of: TWL CORPORATION,

Debtor

─────────────────────────

FRANK TETA,

Appellant

v.

MICHELLE CHOW,

Appellee

─────────────────────────

Appeal from the United States District Court
for the Eastern District of Texas

─────────────────────────

Before KING, SOUTHWICK, and GRAVES, Circuit Judges.

KING, Circuit Judge:

TWL Corporation and its primary subsidiary, TWL Knowledge Group, Inc., filed for bankruptcy in 2008. Appellant Frank Teta, a former TWL employee, commenced a class action adversary proceeding within TWL's bankruptcy suit, alleging violations of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101–2109. The bankruptcy court denied Teta's related motion for class certification and dismissed the adversary proceeding. The district court affirmed. Because the reasons for the bankruptcy court's order

No. 12-40271

are unclear, we VACATE the orders below and REMAND to the district court to remand to the bankruptcy court for reconsideration in light of this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Prior to filing for bankruptcy, TWL Corporation and its primary subsidiary, TWL Knowledge Group, Inc. (collectively "TWL"), were in the business of providing workplace learning, training, and certification programs. Appellant Frank Teta served as a vice president of TWL. On September 8, 2008, TWL allegedly laid off the majority of its workforce, including Teta. On October 19, 2008, TWL filed a voluntary petition for bankruptcy under Chapter 11.[1] The bar date for filing proofs of claim against TWL was February 19, 2009.

On November 4, 2008, Teta filed within TWL's bankruptcy case a complaint against TWL, thereby initiating the adversary proceeding underlying this appeal. In that complaint, Teta—who claims to be acting on behalf of himself and other terminated employees—alleges that TWL violated the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101–2109, by failing to give its employees sixty days written notice of their termination.[2] Teta seeks to recover for himself and the class sixty days of wages and benefits under the Act. He asserts that such claims are entitled to be paid as administrative claims under 11 U.S.C. § 503(b)(1)(A) or, alternatively, as priority unsecured claims under § 507(a)(4) and (5). TWL moved to dismiss Teta's adversary complaint on February 9, 2009.

---

[1] Although each entity filed its own petition, the bankruptcy court has jointly administered the cases. For the sake of convenience, we therefore refer to the cases and their associated duplicative filings and rulings in the singular.

[2] "The WARN Act prohibits employers from ordering a 'plant closing or mass layoff until the end of a 60-day period after the employer serves written notice' of the closing or layoff to its employees." *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 382 (5th Cir. 2000) (quoting 29 U.S.C. § 2102(a)). Employers who violate the Act's notice provision are required to provide "back pay for each day of violation." 29 U.S.C. § 2104(a)(1)(A).

No. 12-40271

In addition to the aforementioned adversary complaint, Teta also filed, on February 18, 2009, a class proof of claim against TWL on behalf of all former TWL employees. The same day, Teta filed a motion seeking class certification[3] and an order naming Teta as the lead plaintiff.[4] On March 23, 2009, the bankruptcy court granted a motion filed by Teta to stay consideration of the class proof of claim until the court ruled on TWL's motion to dismiss the adversary proceeding. At the parties' request, the court abated the adversary proceeding until October 6, 2009. The hearing on the motion to dismiss and the request for class certification subsequently was continued several times because the parties informed the court that they did not wish to proceed with the adversary proceeding until the size of the estate was determined.

In the meantime, because TWL's reorganization efforts were unsuccessful, the court converted the bankruptcy case to Chapter 7 and appointed Appellee Michelle Chow ("Trustee") as trustee of the estate. The last day to file proofs of claim in the converted case was December 10, 2010. Creditors ultimately filed 86 claims against the estate of TWL Corporation, and 107 claims against TWL Knowledge Group, Inc. According to the bankruptcy court's estimation, only 34 of those claims were filed by individuals, of which, fewer than 20 appeared to relate to unpaid wages, salaries, or commissions.

On March 23, 2011, the bankruptcy court denied Teta's motion for class certification and granted the Trustee's motion to dismiss the adversary proceeding.[5] The district court affirmed the bankruptcy court's order *in toto* on February 13, 2012. Teta now appeals.

---

[3] It is unclear whether Teta's motion was filed in his adversary proceeding, his class claim, or both. The court's order clearly is directed, however, to his adversary proceeding.

[4] Also on February 18, 2009, Teta filed an individual proof of claim for $5,472.77 in unreimbursed expenses and 401k plan contributions.

[5] After her appointment, the Trustee assumed administration of the case.

No. 12-40271

## II.  STANDARD OF REVIEW

We apply the same standard of review to the bankruptcy court's decision as applied by the district court.  *In re Amco Ins.*, 444 F.3d 690, 694 (5th Cir. 2006).  We thus review class certification decisions for abuse of discretion.  *In re Wilborn*, 609 F.3d 748, 752 (5th Cir. 2010).  A bankruptcy court abuses its discretion when it applies an improper legal standard or rests its decision on findings of fact that are clearly erroneous.  *In re Babcock & Wilcox Co.*, 526 F.3d 824, 826 (5th Cir. 2008).  Whether the lower court applied the correct legal standard in reaching its decision on class certification is a legal question that we review de novo.  *Allison v. Citgo Petrol. Corp.*, 151 F.3d 402, 408 (5th Cir. 1998).[6]

## III.  ANALYSIS

At the outset, we underscore the limited scope of this appeal.  In particular, while Teta filed a class proof of claim against TWL, that matter is not currently before us, and we expressly decline to address the merits of that claim.  Rather, this appeal concerns only the bankruptcy court's order denying Teta's class certification motion in his adversary proceeding, and its related dismissal of that proceeding.  Teta submits that the bankruptcy court abused its discretion by applying an improper legal standard to the class certification question.  To fully appreciate Teta's objections, a brief discussion of the bankruptcy court's order, and the federal bankruptcy rules implicated by it, is warranted.

### A.  The Bankruptcy Court's Order

In denying class certification, the bankruptcy court held that Teta did not satisfy Rule 23's numerosity and superiority requirements.  With respect to numerosity, the court observed that "[e]ven if all 130 members of the putative class elected to pursue WARN Act claims—which seems unlikely given their lack

---

[6] We do not discuss with particularity our standard of review for the bankruptcy court's dismissal of Teta's adversary proceeding.  As we explain in Part III.D, the bankruptcy court did not clearly articulate its rationale for dismissing Teta's adversary proceeding.

of participation in the claims allowance process to date—that number certainly would be manageable." This conclusion was informed by the court's finding that, although each putative plaintiff could have asserted WARN Act claims "simply by filling out a proof of claim form," none had done so. Because the bar date for filing proofs of claim already had passed on two occasions, the court explained that "class certification would negate the bar date by permitting those who missed the deadline to interpose claims into [the] case without establishing . . . excusable neglect." Moreover, the court expressed that "the expense of allowing [the] adversary proceeding to go forward so that Teta can offer certain creditors a third bite at the proverbial apple is a factor that weighs against class certification." This fact seemed especially weighty to the court, given its conclusion that "[e]ven without considering Teta's WARN Act claims," TWL's estate was "insufficient to pay all of [its] creditors in full." Thus, the court held that "under the facts of this case, Teta has failed to establish the numerosity required to prosecute a class claim."

As for superiority, the court explained that it was unconvinced "that a class action would be a 'superior method' of adjudication as required by Rule 23(b)(3)." The court stated that the "Bankruptcy Code already concentrates any WARN Act claims in [the bankruptcy court] by requiring former employees to seek allowance of such claims in order to share in any distribution from [TWL's] estate[]." Accordingly, the court concluded that "it would be a waste of [TWL's] limited assets to move forward with [the] adversary proceeding when Teta is the only individual who has asserted a timely WARN Act claim, and the claims process can more expeditiously move Teta's claims down a parallel track."

Aside from these general references to the parallel proofs of claim process, the bankruptcy court did not offer an explanation for its decision to grant the Trustee's motion to dismiss Teta's adversary proceeding.

## B. Applicable Bankruptcy Rules

The court issued its order against the backdrop of the procedural rules governing a bankruptcy case. Those rules provide that once a debtor files a bankruptcy petition, a creditor may file a "proof of claim" to establish a claim against the debtor. Fed. R. Bankr. P. 3002. If objected to, the proof of claim becomes a "contested matter." Fed. R. Bankr. P. 9014 advisory committee's note ("Whenever there is an actual dispute, other than an adversary proceeding, . . . the litigation to resolve that dispute is a contested matter."). An "adversary proceeding," on the other hand, is a *lawsuit* filed within the bankruptcy case. *See* Fed. R. Bankr. P. 7001; *see also* 10 Collier on Bankruptcy ¶ 7001.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010) ("Adversary proceedings are separate lawsuits within the context of a particular bankruptcy case and have all the attributes of a lawsuit . . . ."). Adversary proceedings are initiated with the filing of a complaint. Fed. R. Bankr. P. 7003; Fed. R. Civ. P. 3.

Pursuant to Rule 7023—which falls within Part VII of the Federal Bankruptcy Rules—Rule 23 of the Federal Rules of Civil Procedure "applies in adversary proceedings."[7] Fed. R. Bankr. P. 7023. Thus, "[i]n an appropriate situation, class adversary proceedings may be commenced in a bankruptcy case provided that the requirements of the various subdivisions of Rule 23 are satisfied." 10 Collier on Bankruptcy ¶ 7023.01; *see also In re Wilborn*, 609 F.3d at 754 ("[C]lass action proceedings are expressly allowed in the Federal Bankruptcy Rules, which provide that the requirements for class actions under Federal Rule of Civil Procedure 23 apply in adversary proceedings.").

Rule 23 does not necessarily apply, however, to a class proof of claim. First, our circuit has not addressed whether a *class* proof of claim even is

---

[7] "Part VII of the Federal Rules of Bankruptcy Procedure applies to litigated matters that arise during the pendency of a bankruptcy case and that are denoted adversary proceedings." 10 Collier on Bankruptcy ¶ 7000 (footnote omitted).

permissible. Second, Rule 9014, which governs contested matters, provides that only certain procedural rules automatically apply when an objection is lodged to a proof of claim. *See* Fed. R. Bankr. P. 9014. Rule 7023 is not designated as one of these automatically applicable rules, but Rule 9014 does state that "[t]he court *may* at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." Fed. R. Bankr. P. 9014 (emphasis added).

Given this discretion, Rule 23's operation in contested matters involves a two-step process. 10 Collier on Bankruptcy ¶ 7023.01. "First, the court must exercise its discretion [under Rule 9014] as to whether to apply Rule 23 to the contested proceeding." *Id.* Second, if the court decides to apply Rule 23, it then must determine whether the Rule's requirements for class certification have been satisfied. *Id.* In considering whether to apply Rule 23 in the first instance:

> the court will consider a variety of factors relating to the bankruptcy case. These include: (1) whether the class was certified pre-petition, (2) whether the members of the putative class received notice of the bar date, and (3) whether class certification will adversely affect the administration of the case, especially if the proposed litigation would cause undue delay.

*Id.* The court also may consider the benefits and costs of class litigation to the estate. *In re Computer Learning Ctrs., Inc.*, 344 B.R. 79, 86 (Bankr. E.D. Va. 2006).

There is thus a distinction between Rule 23's operation in an adversary proceeding and its operation in the claims process. In an adversary proceeding, Rule 23 is automatically applicable: "there is no need to seek its application as is required in the claims allowance process." *Id.* at 92 n.17. In contrast, although Rule 23 perhaps may be applicable within the proofs of claim process, under Rule 9014, the bankruptcy court has discretion whether to authorize its application to a proof of claim.

## C. Class Certification

With this foundation in mind, we turn to Teta's challenge to the bankruptcy court's denial of class certification. In essence, Teta contends that instead of simply analyzing the class certification issue under Rule 23, the bankruptcy court improperly "based its decision to deny certification on a body of discretionary determinations under Rule 9014, none of which have any bearing on class certification in adversary proceedings."

We agree with Teta that the bankruptcy court appears at times to have erroneously conflated rules applicable in an adversary proceeding with those applicable in a contested matter. Nevertheless, under de novo review, we reject Teta's ultimate contention that it is impermissible for a bankruptcy court addressing a class certification motion under Rule 23 to consider, among other relevant matters, factors related to the bankruptcy case. As we will discuss, however, in this instance, although the bankruptcy court adopted the proper legal standard in assessing Rule 23's superiority requirement, it failed to explain with sufficient particularity its rationale for denying class certification. Accordingly, we must remand for the court to enter the specific findings of fact and conclusions of law necessary to support the order it issues on remand. *See Westwego Citizens for Better Gov't v. City of Westwego*, 872 F.2d 1201, 1204 (5th Cir. 1989).

### 1. Rule 23's Requirements

Rule 23 states that class actions may be maintained if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Additionally, the suit must fit into one of the three categories set forth in Rule 23(b)—one of which, as relevant here, requires that the court "find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010); *see also id.* at 1438 (rejecting defendant's assertion that a court has discretion whether to certify a class where the Rule's requirements are met).

In this case, the bankruptcy court concluded that Teta failed to satisfy the numerosity and superiority prongs of Rule 23.  Because "a plaintiff's request for class certification must fail if any one of Rule 23's requirements is not met," we address these requirements in turn.  *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 503 n.1 (5th Cir. 2004) (per curiam).

### 2. Numerosity

Under Rule 23(a)(1), a class action is proper where "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  On this score, Teta argues that we previously have held that a putative class of 100 to 150 members "is within the range that generally satisfies the numerosity requirement."  *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999).  Teta neglects, however, that we also explained in *Mullen* that "the number of members in a proposed class is not determinative of whether joinder is impracticable."  *Id.*

Indeed, leading commentators note that "there is no definite standard as to what size class satisfies Rule 23(a)(1)."  7A Charles Alan Wright et al., Federal Practice and Procedure § 1762 (3d ed. 2005) (collecting cases in which

numerosity was satisfied with as few as 25 putative class members, but not satisfied with as many as 350, and explaining that this inconsistency "graphically demonstrates that caution should be exercised in relying on a case as a precedent simply because it involves a class of a particular size"). For this reason, we have counseled that "courts must not focus on sheer numbers alone." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000). Rather, assessing numerosity also entails consideration of "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. Unit A July 1981); *see also* William B. Rubenstein, 1 Newberg on Class Actions § 3:12 (5th ed. 2012) (explaining that courts also consider "judicial economy arising from the avoidance of a multiplicity of actions"); *accord Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).

Here, the bankruptcy court recognized that the putative class contained 130 members. Nonetheless, for the reasons set forth in Part III.A, it found this number insufficient to satisfy Rule 23's numerosity requirement. Like Teta, we question whether some of the considerations cited by the court have any bearing on whether Teta satisfied Rule 23's numerosity requirement.[8] We do note, however, that, given *Zeidman*'s direction that a court addressing a class certification motion must consider the "nature of the action" at issue, 651 F.2d at 1038, we cannot accept his more general argument that bankruptcy-related factors have no role to play in a bankruptcy court's consideration of a class certification motion.

Here, for instance, the bankruptcy court expressly noted that "[e]ven if all 130 members of the putative class elected to pursue WARN Act claims—which

---

[8] Nevertheless, as we explain *infra*, certain of these factors may influence a court's superiority inquiry.

No. 12-40271

seems unlikely given their lack of participation in the claims allowance process to date—that number certainly would be manageable." While the putative members' lack of participation in the claims process does not appear to be relevant to Rule 23's numerosity analysis for reasons that will be discussed *infra*, the court's reference to the size of the class certainly is. Outside the bankruptcy context, a putative class with only 130 members already might present a close question as to numerosity, depending on the particular circumstances of the case. *See Jaynes v. United States*, 69 Fed. Cl. 450, 454–55 (Fed. Cl. 2006) (finding that a class with as many as 258 putative members failed to satisfy numerosity because the class members all had worked in the same area and easily could be identified and located). Within the bankruptcy context, because "[i]t is not unusual for large numbers of claims to be filed, objected to and allowed or disallowed," even larger putative classes may not be so numerous as to make joinder impracticable. *In re Woodmoor Corp.*, 4 B.R. 186, 189 (Bankr. D.Colo. 1980) (concluding that Rule 23's numerosity requirement was not satisfied where putative class consisted of approximately 900 members, because their proofs of claims, which were then pending before the court, could "be conveniently and expeditiously managed by following normal bankruptcy procedures"); *see also In re First Magnus Fin. Corp.*, 403 B.R. 659, 663–64 (D. Ariz. 2009) (affirming the dismissal of a WARN Act adversary proceeding with a putative class of over 5,000 members because "the normal bankruptcy claims procedure was adequate to handle the claims").

As Teta correctly points out, however, it is not possible on the record before us to determine to what extent the court's numerosity ruling was influenced by these permissible factors, and to what extent it may have been influenced by factors that are irrelevant to whether joinder was impracticable. Thus, because we are unable to affirm the orders below on the bankruptcy court's numerosity analysis, we turn to its consideration of Rule 23's superiority requirement.

11

No. 12-40271

### 3. Superiority

Under Rule 23(b)(3), a court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.* "[T]his list is not meant to be exhaustive and the court has discretion to consider whatever other factors it deems relevant to the determination."[9] 7AA Charles Alan Wright et al., Federal Practice and Procedure § 1777 (3d ed. 2005).

Here, for the reasons explained in Part III.A, the court held that it was unconvinced that "a class action would be a 'superior' method of adjudication as required by Rule 23(b)(3)." Again, Teta complains that the court's order evidences that the court erred by considering discretionary bankruptcy-related factors relevant under Rule 9014, but not relevant under Rule 7023 or, by incorporation, Rule 23. In advancing this argument, however, Teta unduly limits the factors a bankruptcy court must consider when analyzing Rule 23's

---

[9] Thus, to the extent Judge Graves implies that we endorse anything other than a "pure Rule 23 analysis," we reject that notion. To the contrary, we merely hold that bankruptcy-related factors are relevant *as part of* a bankruptcy court's Rule 23 analysis. We therefore similarly reject, as other courts have, Judge Graves's suggestion that Rule 23(b)(3)(A)–(D) exhaustively lists the considerations pertinent to a court's superiority analysis. *See, e.g.*, *Esplin v. Hirschi*, 402 F.2d 94, 98 n.7 (10th Cir. 1968), *cert. denied*, 394 U.S. 928 (1969) (explaining that a court assessing the predominance and superiority requirements "is directed to weigh four *non-exhaustive* factors" (emphasis added)); *see also* Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment ("Factors (A)–(D) are listed, *non-exhaustively*, as pertinent to the [predominance and superiority] findings." (emphasis added)).

superiority requirement.

In requiring a court to find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3), Rule 23 necessarily suggests a comparative process, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998). This plain reading of the Rule is reinforced by an associated advisory committee's note, which states that the court "ought to assess the relative advantages of alternative procedures for handling the total controversy." Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment. "As is the case with Rule 23(b)(3) generally, the superiority analysis is fact-specific and will vary depending on the circumstances of any given case." *Robertson v. Monsanto Co.*, 287 F. App'x 354, 361 (5th Cir. 2008) (per curiam) (unpublished).

Within a bankruptcy case, a leading authority suggests that the superiority inquiry assumes added import: "Comparison should be made with respect to the requirements of treating the action as a class suit with the advantages and disadvantages that could result from prosecution of the claims by other means, especially in the bankruptcy context." 10 Collier on Bankruptcy ¶ 7023.03[3]. For this reason, it is notable that certain bankruptcy-related factors—including "whether class certification will adversely affect the administration of the case"—are "relevant to, and have been considered in the determination of, whether the requirements of Rule 23 have been met." *Id.* ¶ 7023.01. In *Computer Learning Centers*, for example, the court concluded that, in that case, a class action was not superior "to the ordinary operation of [the related] bankruptcy case." 344 B.R. at 92 (addressing a class proof of claim).

In our view, a bankruptcy court *should* consider the cost to the debtor's estate of a class adversary proceeding simply because the expense of adjudicating the controversy via a class action depletes the debtor's assets, which in turn diminishes the funding available to creditors, including, possibly,

the very claimants pursuing the class action.[10]    Such a consideration is particularly relevant in a case such as this, a Chapter 7 bankruptcy with insufficient assets to pay existing creditors.  As a corollary, we also conclude that a bankruptcy court *should* consider the availability and ease of the proof of claim process when determining whether a class adversary proceeding is a superior method for fairly and efficiently adjudicating a controversy.[11]    A court's consideration of bankruptcy-related factors not only generally serves to inform its assessment of the comparative merits of one adjudication method over another, but in a case like this—where a comparable class proof of claim has been filed—assessing these factors also is perfectly in keeping with Rule 23's requirement that the court consider "the extent and nature of any litigation concerning the controversy already begun by or against class members."  Fed. R. Civ. P. 23(b)(3)(B).  As the court here explained, it may well be the case in the bankruptcy context that "the claims process can more expeditiously move [a claimant's] claims down a parallel track."

---

[10] We note, however, that it would be error for a bankruptcy court to neglect other important factors related to the superiority inquiry by placing too much emphasis on the cost to the estate of the class proceeding.

[11] On this score, the Trustee emphasizes the simple and inexpensive nature of the claims process.  The claims form is a mere three pages in length, including instructions.  *See* Official Bankruptcy Form B-10, Proof of Claim.  Moreover, aside from postage, there is no fee incurred to file a proof of claim.  *See* 28 U.S.C. § 1930.  In contrast, counsel's fee in a class adversary proceeding is derived from the class members' recovery.  Thus, although Judge Graves is correct that counsel's fee does not deplete the bankrupt's estate, it nevertheless reduces a claimant's ultimate recovery.  Counsel's fee is therefore an expense that the bankruptcy court properly may consider in analyzing Rule 23's superiority requirement, because filing a proof of claim (class or otherwise) may be a more efficient and cost-effective method for a claimant to collect on a claim.  *See First Magnus* 403 B.R. at 663–64 (affirming the dismissal of a WARN Act adversary proceeding because "the adversarial process was duplicative of the normal bankruptcy claims procedure" and "the normal bankruptcy claims procedure was adequate to handle the claims").

No. 12-40271

Our conclusion that a bankruptcy court assessing Rule 23's superiority prong may take into account certain bankruptcy-related factors is not to say, of course, that a class adversary proceeding never can be superior. As will be clear from the following discussion, the facts presented in each particular situation must be assessed on a case-by-case basis to determine whether the requirements of Rule 23 have been met. We simply say that, here, the bankruptcy court adopted the correct legal standard in assessing Rule 23's superiority prong.

### 4. Application of the Proper Legal Standard

Having determined that the bankruptcy court did not improperly consider bankruptcy-related factors in assessing Rule 23's superiority prong, we must now resolve whether, in this case, it abused its discretion in denying class certification. We begin with the premise that "superiority analysis requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 525 (5th Cir. 2007) (internal quotation marks omitted). As noted, this class adversary proceeding concerns a claim pressed under the WARN Act. To prove a WARN Act claim, a plaintiff must demonstrate that: (1) the defendant was "an employer"; (2) the defendant ordered a "plant closing" or "mass layoff"; (3) the defendant failed to give to the plaintiff sixty days notice of the closing or layoff; and (4) the plaintiff is an "aggrieved" or "affected" employee.[12]   29 U.S.C. §§ 2102, 2104. If a plaintiff establishes these requirements, the employer may avoid liability by proving that it qualifies for the Act's "faltering company" exemption, or that the closing or layoff resulted from "unforeseen business circumstances" or a "natural disaster." *See* 20 C.F.R. § 639.9.

Here, the bankruptcy court generally acknowledged these elements of, and defenses to, a WARN Act claim. However, it entered no findings or conclusions

---

[12] "Employer," "plant closing," "mass layoff," and "affected employee" are all terms defined by the Act.  29 U.S.C. § 2101.

15

No. 12-40271

as to the relative complexity, in this case, of adjudicating the claims. There is no indication in the court's order, for instance, of whether the Trustee has or intends to assert any defenses, and, if so, whether those defenses are colorable. This is significant because if defenses are to be asserted, the need for attorneys both to assert the claims and to defend against them becomes greater and, in spite of the associated costs, may be important to the ability of the claimants to recover and of the debtor to defend.[13] On the other hand, if the Trustee does not intend to assert any defenses, it may be the case that resolution of the claims would be relatively uncomplicated and inexpensive.[14] Nevertheless, we simply have no insight into these and related matters, as the only explanation the court provided for its superiority holding was the conclusory declaration that "it would be a waste of [TWL's] limited assets to move forward with [the] adversary proceeding when Teta is the only individual who has asserted a timely WARN Act claim, and the claims process can more expeditiously move Teta's claims down a parallel track."

With just this conclusory statement to rely on, "we are unable to determine . . . the thought processes of the court below." *Velasquez v. City of Abilene*, 725 F.2d 1017, 1021 (5th Cir. 1984). "When because of absence of findings of fact or conclusions of law, an appellate court cannot determine whether the record supports the [lower] court decision, it should remand the action for entry of findings of fact and conclusions of law." *Vizena*, 360 F.3d at 503 (quoting

---

[13] With this in mind, we underscore that we agree with Judge Graves that the Trustee's litigation costs may deplete the estate, and we thus conclude that a bankruptcy court properly may consider the effect of those costs when assessing Rule 23's superiority prong.

[14] Although Judge Graves correctly observes that the Trustee has filed an objection to Teta's class proof of claim, as we already have explained, that claim currently is not before us, and we express no view as to its merits. We note, however, that contrary to Judge Graves's suggestion, the fact that the Trustee has objected to Teta's class proof of claim sheds no light on the complexities that may be introduced into this adversary proceeding were the Trustee to assert an affirmative defense to the underlying WARN Act claim.

16

*Complaint of Ithaca Corp.*, 582 F.2d 3, 4 (5th Cir. 1978)). Accordingly, we must vacate the orders below and remand for entry of these necessary findings and conclusions.

### 5.  The Pending Class Proof of Claim

Although, as noted, we are unable on this record to affirm the bankruptcy court's order, Teta advances an additional argument urging us to reverse that is not necessarily dependent on the absent findings and conclusions. Specifically, Teta implies that by declining to reverse the court's denial of class certification in the adversary proceeding, we effectively foreclose any right the putative class members may have to recover under the WARN Act. In reaching this conclusion, Teta speculates that because the bankruptcy court denied class certification in the adversary proceeding, we may infer that it will do so again on remand, and that it will do the same in connection with the class proof of claim. Teta posits that denial of class certification in connection with the proof of claim is especially likely given the broader discretion the court has under Bankruptcy Rule 9014 to deny class certification in contested matters.

While Teta's arguments are not facially without force, we ultimately do not share his concern.   First, with this opinion, we vacate the bankruptcy court's denial of class certification in the adversary proceeding.  While we offer no view as to how the bankruptcy court should resolve that matter on remand, we cannot assume—as adoption of Teta's argument would require—that it necessarily will once again deny class certification in the adversary proceeding.  Moreover, although we likewise take no position on the propriety of Teta's class proof of claim, we nevertheless are unwilling to conclude that the court necessarily will prevent that claim from moving forward.  The bankruptcy court has yet to rule on that matter, and it would be improper for us to speculate about what the court *might* do in relation thereto.

Further, even assuming that the bankruptcy court again denies

certification in the adversary proceeding, and also finds the class proof of claim impermissible, the rights of putative class members associated with that proof of claim seemingly would be protected by the reasoning underlying *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983). There, the Supreme Court explained that "[t]he filing of a class action tolls the statute of limitations 'as to all asserted members of the class.'" *Id.* at 350 (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974)). Applying this reasoning in the bankruptcy context, a sister circuit has explained that if a "bankruptcy court denies [a class certification] motion, it should then establish a reasonable time within which the individual putative class members are allowed to file individual proofs of claim." *Gentry v. Siegel*, 668 F.3d 83, 91 (4th Cir. 2012); *see also In re Am. Reserve Corp.*, 840 F.2d 487, 493 (7th Cir. 1988) ("If the bankruptcy judge denies the request to certify a class, then each creditor must file an individual proof of claim . . . .").

"Stated otherwise, by recognizing class actions, the Bankruptcy Rules also recognize that putative class representatives can keep the class action process alive until the court decides the issue." *Gentry*, 668 F.3d at 90; *see also Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383, 1387 (10th Cir. 1987) (per curiam) (leaving unresolved "the class action claims issue," but requiring instead that notice be given to the putative class members, and that a new bar date be established to allow them to file individual proofs of claim); *In re Entergy New Orleans, Inc.*, 353 B.R. 474, 483–84 (Bankr. E.D. La. 2006) (discussing the complicated issues surrounding notice when a class proof of claim is denied after the bar date has passed, and when "most if not all of the putative class members are likely unaware that they have a potential claim," but eventually resolving the case on other grounds). Thus, although the bankruptcy court appears repeatedly to fault the putative class members for not filing individual claims, Teta's class proof of claim—which was filed well prior to the bar date—was filed on their behalf, and therefore appears to preserve their claims pending

resolution of the class certification issue.[15]

However, because Teta's class proof of claim currently is not before us, we need not resolve these matters. We raise them merely to explain our rationale for rejecting Teta's contention that, by declining to reverse the orders below, we effectively foreclose any right the putative class members may have to recovery. As is evident, to the extent the putative class members have viable WARN Act claims, they also appear to have multiple avenues by which they may press those claims. We leave to the bankruptcy court, in the first instance, the determination of how those claims should be addressed.

## D. Dismissal of the Adversary Proceeding

As explained, the bankruptcy court also granted the Trustee's motion to dismiss Teta's adversary proceeding. Unfortunately, the court's findings and conclusions as to why it did so are even more bare than those associated with its treatment of Teta's class certification motion. In fact, the only line the court's ten-page order that even peripherally addresses the court's dismissal states: "Similar to *In re First Magnus Financial Corp.*, . . . the [c]ourt believes it would be a waste of [TWL's] limited assets to move forward with this adversary proceeding when Teta is the only individual who has asserted a timely WARN Act claim, and the claims process can more expeditiously move Teta's claims down a parallel track."

Although the bankruptcy court's order does not indicate on what basis the Trustee sought dismissal of Teta's adversary proceeding, the record is clear that the related motion was filed pursuant to Federal Rule of Civil Procedure 12(b)(6)

---

[15] Judge Graves similarly contends that "[n]o former employee other than Teta filed a WARN Act proof of claim, indicating that the interest of putative class members in individually controlling the case would be low." Again, this neglects that Teta's class proof of claim obviated the need for other individuals to file their own claims at this point in the litigation.

No. 12-40271

for failure to state a claim.[16]  Nevertheless, nothing in the court's order offers insight into why it agreed that Teta's adversary complaint failed to state a claim for relief, or why dismissal otherwise was proper.  *Cf. In re Dewey & LeBoeuf LLP*, No. 12-12321 (MG), 2013 WL 556163, at *4 (Bankr. S.D.N.Y. Feb. 13, 2013) (explaining that an adversary complaint seeking class WARN Act claims stated a claim for relief because "it assert[ed] that the Debtor terminated Plaintiff and other employees in the month before the bankruptcy filing, and it allege[d] that Debtor failed to comply with the WARN Acts' notice requirements").

Moreover, the bankruptcy court's citation to *First Magnus* is less helpful than might at first might be apparent.  In *First Magnus*, the court dismissed the adversary complaint pursuant to Rule 41(b) rather than Rule 12(b)(6).  403 B.R. at 663; *see also* Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.").  There is thus no evidence to indicate that the *First Magnus* court believed the complaint there did not state a claim for relief, nor is there evidence here to suggest that Teta failed to prosecute his claim, or failed to comply with applicable rules or court orders.

Thus, we again are left without adequate findings of fact and conclusions of law by which we may determine whether the record supports the bankruptcy court's dismissal of Teta's adversary complaint.  We therefore are compelled to vacate the orders below insofar as those orders granted the Trustee's motion to dismiss Teta's adversary proceeding.  *See Vizena*, 360 F.3d at 503.

## IV. CONCLUSION

Because the reasons for the bankruptcy court's order are unclear, we VACATE *in toto* the orders below and REMAND to the district court to remand to the bankruptcy court for reconsideration in light of this opinion.  We express

---

[16] Federal Rule of Civil Procedure 12(b)(6) is made applicable to adversary proceedings by Bankruptcy Rule 7012(b).  *See* Fed. R. Bankr. P. 7012(b).

No. 12-40271

no view as to the outcome the bankruptcy court should reach on remand in reconsidering Teta's motion for class certification and the Trustee's motion to dismiss the adversary proceeding.

No. 12-40271

JAMES E. GRAVES, JR., Circuit Judge, concurring in the judgment only:

I would reverse the district court's affirmance of the bankruptcy court's denial of class certification and dismissal of this class adversary proceeding. Nevertheless, I concur in the judgment insofar as it requires the bankruptcy court to reconsider its holding.

In its Federal Rule of Civil Procedure 23 "numerosity" and "superiority" analyses,[1] the bankruptcy court erred as a matter of law in applying bankruptcy-related factors such as the expense to the estate in litigating a class adversary proceeding.[2] There is a distinction between: (a) the necessity of the district court's strict adherence to Rule 23's "specified criteria"[3] in class *adversary proceedings*; and (b) the district court's discretionary ability to consider other factors under Federal Rule of Bankruptcy Procedure 9014 in contested matters, which include *proofs of claim*. The Eleventh Circuit has explained this distinction in simple terms: "Rule 23 may be invoked in two circumstances: in

---

[1] As relevant to this case, Rule 23 states that class actions may be maintained if: "the class is so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1) (numerosity), and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (superiority). The following enumerated factors are to be considered in the "superiority" analysis:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

[2] Of course, in determining whether to certify a class adversary proceeding, it is impossible to avoid considering some factors related to the bankruptcy—Teta filed this adversary proceeding in the midst of TWL's Chapter 7 bankruptcy proceeding. Therefore, I use the term "bankruptcy-related factors" to specifically reference factors unrelated to those four factors enumerated in Rule 23(b)(3)(A)-(D), as well as factors that are not applicable under Rule 23(a)(1).

[3] *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010) (Scalia, J.) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.").

an adversary proceeding and in a contested matter.  Pursuant to the terms of Bankruptcy Rule 7023, Rule 23 applies in any adversary proceeding.  Also, under Bankruptcy Rule 9014, the bankruptcy judge may at his discretion apply Bankruptcy Rule 7023, and by extension Rule 23, in a contested matter."  *In re Charter Co.*, 876 F.2d 866, 873 (11th Cir. 1989).

Indeed, the Supreme Court has held that Rule 23 "says that if the prescribed preconditions [i.e. Rule 23's specified criteria] are satisfied 'a class action *may be maintained*' (emphasis added)—not '*a class action may be permitted.*'"  *Shady Grove Orthopedic Assocs.*, 130 S. Ct. at 1438 (2010).  The Court continued, "[c]ourts do not maintain actions; litigants do.  The discretion suggested by Rule 23's 'may' is discretion residing in the plaintiff: He may bring his claim in a class action if he wishes."  *Id.*  Here, even the Trustee appears to have acknowledged that the bankruptcy court lacks discretion to consider criteria unrelated to the enumerated Rule 23 factors in its class certification determination of this adversary proceeding:

| | |
|---|---|
| Court: | "In making the determination about whether or not to certify a class, are you saying that's not a *pure* Rule 23 analysis in a bankruptcy proceeding?" |
| Trustee: | "In a lawsuit [i.e. bankruptcy adversary proceeding], it is a *pure* Rule 23 analysis." |

Oral Argument at 31:50.

As Judge King correctly recognizes, we are called to adjudicate the denial of class certification in the WARN Act adversary proceeding, not the WARN Act class proof of claim.  Therefore, it is undisputed that this requires a pure Rule 23 analysis.  Considering bankruptcy-related factors such as the expense to the estate in litigating a class adversary proceeding is a departure from a pure Rule 23 analysis because those factors fall outside of Rule 23's "specified criteria" of, *inter alia*, the four factors enumerated in Rule 23(b)(3)(A)-(D).  The bankruptcy court thus erred as a matter of law.

No. 12-40271

## I.

Following a pure Rule 23 analysis, I would reverse the bankruptcy court's denial of class certification. Because Judge King bases her holding on the Rule 23(b)(3) "superiority" analysis, I focus on that.[4]

Judge King's opinion explicitly addresses only one of the four enumerated Rule 23(b)(3) "superiority" factors: "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." Fed. R. Civ. P. 23(b)(3)(B). This factor supports class certification. The related WARN Act class proof of claim was simply filed as a precautionary measure, and bankruptcy courts have held that the class adversary proceeding is a preferable way to adjudicate WARN Act claims, as opposed to the proof of claim process. *See, e.g., In re Taylor Bean & Whitaker Mortg. Corp.*, 2010 WL 4025873, *3 (Bankr. M.D. Fla. Sept. 27, 2010) (unpublished) ("resolving the WARN Act claims collectively through a class action adversary proceeding will be more efficient than handling them in a piece-meal fashion through the claims process."); *In re First NLC Fin. Servs., LLC*, 410 B.R. 726, 730 (Bankr. S.D. Fla.

---

[4] The Rule 23(a) "numerosity" analysis also favors class certification of this adversary proceeding. Judge King is correct that courts "must not focus on sheer numbers alone" in determining whether joinder is impracticable. *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000) (citations omitted). Nevertheless, we have ruled that a class of "100 to 150 members [] is within the range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citation omitted). Moreover, the putative class here contains 130 plaintiffs, and bankruptcy and district courts—including at least one court in our circuit—have certified WARN Act classes of between 50 to 160 putative plaintiffs. *See, e.g., Grimmer v. Lord Day & Lord*, 1996 WL 139649, *11-12 (S.D.N.Y. 1996) (unpublished) (certifying WARN class of 92); *Finnan v. L.F. Rothschild & Co., Inc.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989) (certifying WARN class of 127); *In re CQMS Razer (U.S.), LLC*, Ch. 7 Case No. 11-13291, Adv. Pro. No. 12-01003 (Bankr. W.D. La. Oct. 2, 2012) (certifying class of approximately 160 and approving WARN Act settlement); *In re Spring Ford Indus., Inc.*, 2004 WL 231010, *6 (Bankr. E.D. Pa. Jan. 20, 2004) (unpublished) (holding that "alleged class size of 150 to 270 terminated employees clearly meets the greater-than-forty requirement of [the Third] [C]ircuit."); *In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 64 (Bankr. D. Del. 2002) (certifying WARN class of 47). This putative class fits well within that range.

No. 12-40271

2008) ("if the class is certified, the Court finds that as between an adversary proceeding and the claims process, an adversary proceeding has the potential to provide a less protracted and more efficient litigation framework.").

Lending further weight for class certification under this factor, the Bankruptcy Court for the Southern District of Texas has held that the "greatest indication that a class action [adversary proceeding] would be superior to other available methods of adjudication" is a "negative value suit." *In re Wilborn*, 404 B.R. 841, 868 (Bankr. S.D. Tex. 2009) (citations omitted), *vacated on other grounds*, 609 F.3d 748 (5th Cir. 2010)[5]; *see also In re Charter Co.*, 876 F.2d at 871 ("[T]he effort and cost of investigating and initiating a claim may be greater than many claimants' individual stake in the outcome, discouraging the prosecution of these claims absent a class action filing procedure."); Collier on Bankruptcy ¶ 7023.03(3) (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("It could be economically impossible for each class member to proceed on an individual basis."). Since this is clearly a "negative value suit"—the cost to each worker to litigate his or her own WARN Act proof of claim would almost certainly outweigh the value of the claim[6]—it only makes sense to pursue the claims as a class in an adversary proceeding.

Additionally, the Bankruptcy Court for the Southern District of Florida has explained why the class adversary proceeding is more efficient and fairer to putative WARN Act class members than the proof of claim process: "resolution of the WARN Act claims will be expedited and handled more efficiently in a class adversary proceeding because [it] will also require the Trustee to state any objections to claims that she may have more promptly than would be required

---

[5] "A negative value suit is a case in which the costs of enforcement in an individual action would exceed the expected individual recovery." *Id.* (quotations omitted).

[6] Teta asserts that each individual claim would be minimal—"60 days wages is all, it's a couple of thousand dollars for most people." Oral Argument at 8:12.

in the normal claims objection process." *In re First NLC Fin. Services, LLC*, 410 B.R. at 730. Even in a *class* proof of claim, which Judge King concedes may not even be available in this circuit, the trustee would still be able to delay consideration of the class proof of claim to the detriment of the putative WARN Act creditors,[7] while a class adversary proceeding would require the trustee to consider the claim earlier.

Each of the other three enumerated Rule 23(b)(3) "superiority" factors also supports class certification of the adversary proceeding. The first factor, "the interest of members of the class in individually controlling the prosecution or defense of separate actions," Fed. R. Civ. P. 23(b)(3)(A), favors class certification. No former employee other than Teta filed a WARN Act proof of claim, indicating that the interest of putative class members in individually controlling the case would be low. The second factor, discussed above, falls in favor of class certification. As for the third factor, "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," Fed. R. Civ. P. 23(b)(3)(C), no one disputes the propriety of concentrating the litigation of the claims in the bankruptcy court. And the fourth factor, "the difficulties likely to be encountered in the management of a class action," Fed. R. Civ. P. 23(b)(3)(D), supports class certification because, as further discussed below, WARN Act claims are especially well-suited for class treatment. *Gomez v. Am. Garment Finishers Corp.*, 200 F.R.D. 579, 584-85 (W.D. Tex. 2000) (holding that there is no manageability problem related to the class in a WARN Act claim); *see also Finnan v. L.F. Rothschild & Co., Inc.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989) ("The WARN Act seems particularly amenable to class litigation.").

## II.

Assuming *arguendo* that it is proper to consider the bankruptcy-related

---

[7] As discussed below, however, the Trustee here has already objected to the WARN Act class proof of claim for the very reason that a class proof of claim is not allowed in this circuit.

factors stated by Judge King in determining whether Rule 23(b)(3)'s "superiority" requirement is satisfied, those factors also weigh in favor of granting class certification of this adversary proceeding. Among the bankruptcy-related factors Judge King deems appropriate for consideration are: (1) the cost to the debtor's estate of a class adversary proceeding, and (2) class counsel's fee in a class adversary proceeding.

With respect to the cost to the debtor's estate, courts have recognized that treating WARN Act claims as a class adversary proceeding actually is the *best* way to preserves the estate's assets. In granting class certification of a WARN Act adversary proceeding, the Bankruptcy Court for the Northern District of Alabama wrote "it is in the best interests of the putative class members, judicial economy, and *even [the debtor's estate]* to an extent to adjudicate these matters in one single action." *In re Bill Heard Enters., Inc.*, 400 B.R. 795, 803 (Bankr. N.D. Ala. 2009) (emphasis added). The court continued, "principles of judicial economy and preservation of the bankruptcy estate require this Court to select one of the adversary proceedings to resolve the WARN Act claims rather than allowing each of the actions involving the same claims to proceed." *Id.* at 804 (citing *In re Protected Vehicles, Inc.*, 397 B.R. 339, 346 (Bankr. S.C. 2008)). Indeed, the expense of litigating multiple proofs of claim, not to mention the costs the Trustee has already incurred in fighting these relatively low-value WARN Act claims, appear to present more of a risk of unnecessarily depleting the estate's assets than anything else.

There is no need to remand the case for the bankruptcy court to enter its findings of fact and conclusions of law on the relative complexity of adjudicating the claims, including "whether the Trustee has or intends to assert any defenses." The Trustee has *already* complicated the WARN Act class proof of claim, as demonstrated by the following three defenses she has asserted to the class proof of claim: (1) "class claims are not allowed in bankruptcy," *In re TWL*

No. 12-40271

*Corp.*, Ch. 7 Case No. 08-42773, Brief in Support of Trustee's Objection to Teta's WARN Act Class Proof of Claim 3, Bankr. E.D. Tex. ECF No. 401; (2) even if class claims were allowed, Teta did not timely file for class treatment of the WARN Act claim, *id.* at 5-6; and (3) even if class claims were allowed, the WARN Act class claim should be disallowed for the very same reasons the bankruptcy court denied class certification of this adversary proceeding (numerosity and superiority), *id.* at 6-11. These defenses are material to the class certification analysis in this WARN Act adversary proceeding because they attest to the superiority of the class adversary proceeding over the proof of claims process.[8]

The Trustee's defenses will require attorneys to litigate the issues, especially since Judge King's opinion acknowledges that the class proof of claim may not even be an option. Workers cannot be expected to proceed *pro se* in the claims process and Teta's counsel, which has litigated roughly 100 WARN Act cases, states that individually-filed WARN Act claims are simply unheard of. Appellant's Reply Br. at 6; Oral Argument at 14:50. Indeed, as this case has demonstrated with only one individual WARN Act proof of claim filed, the average worker that has just lost his or her job does not read a bankruptcy court's notice to creditors and decide to file a WARN Act proof of claim. If he or she can decipher the language of the notice, she would then need to: (1) be familiar with the WARN Act, which is nowhere referenced in the notice; (2) know that she has a potential WARN Act claim and navigate the proof of claim form; and (3) be prepared to litigate the claim when her former employer's estate contests it. This may be a reasonable expectation of commercial creditors, but for an ordinary worker owed a few thousand dollars in back wages, it is a formidable task.

---

[8] Moreover, the Trustee's first defense—that the class proof of claim is not even an option for Teta—lends further support to adjudicating the WARN Act claims as a class adversary proceeding, which the Trustee concedes is permissible.

No. 12-40271

With respect to class counsel's fee in an adversary proceeding, the fee does not deplete the assets in the bankruptcy estate. The class counsel's fee derives from any funds awarded to class members, and is not awarded in addition to the damages that the estate pays to the class members. If anything, then, the only fees depleting the estate's assets are those charged by the Trustee and her attorneys.

## III.

Class WARN Act filings in bankruptcy are not new, and while some courts have opted to adjudicate them through the bankruptcy claims process, just as many or more have found the class adversary proceeding a superior adjudication structure for the reasons articulated above. *See* 2 Employee and Union Member Guide to Labor Law § 10:14 (Labor and Employment Law Committee, National Lawyers Guild 2012) (surveying courts' recent treatment of WARN Act class filings; "WARN Act claims are very often handled by bankruptcy courts in adversary proceedings, though some courts have dismissed adversary proceedings in favor of adjudication through the bankruptcy claim allowance/disallowance process.").

I would reverse the denial of class certification and dismissal of the adversary proceeding because, under a pure Rule 23 analysis or even applying bankruptcy-related factors, joinder would be impracticable and the class adversary proceeding would be the superior way to handle the putative plaintiffs' WARN Act claims. Nevertheless, I concur in the judgment insofar as it requires the bankruptcy court to reconsider its denial of class certification.